**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

JOSE GUILLERMO B. R.,

Petitioner,

v.

TODD BLANCHE, *in his official capacity as Attorney General of the United States*; MARKWAYNE MULLIN, *in his official capacity as Secretary of the Department of Homeland Security*; DAVID J. VENTURELLA, *in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement*; DAVID EASTERWOOD, *in his official capacity as Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*; and RYAN SHEA, *in his official capacity as Sheriff of Freeborn County, Minnesota*,

Respondents.

Case No. 26-cv-3599 (LMP/ECW)

**ORDER GRANTING HABEAS PETITION**

---

Eric D. Sidler, **Lathrop GPM LLP, Kansas City, MO**, for Petitioner.

Worthington S. Phillips, **United States Attorney's Office, Minneapolis, MN**, for Respondents.[1]

---

[1] When used in this Order, "Respondents" or "Government" refer to the federal officials named as Respondents. Respondent Ryan Shea, the Freeborn County Sheriff, has not participated in these proceedings.

Petitioner Jose Guillermo B. R.[2] brings a petition for a writ of habeas corpus, challenging the legality of his arrest and detention. For the following reasons, the petition is granted, and the Court orders the Government to provide Jose with a bond hearing.

**BACKGROUND**

Jose is a native and citizen of Mexico who came to the United States in 2001, when he was six years old. ECF No. 1 ¶ 2. He has largely resided and worked in Minnesota since that time. *Id.* ¶ 22.

On September 29, 2017, Immigration and Customs Enforcement ("ICE") officers took Jose into custody, served him a Notice to Appear, and initiated removal proceedings against him as a noncitizen with no lawful status. *Id.* ¶ 24; ECF No. 8-1. On December 7, 2017, an immigration judge ordered Jose released on a $5,000 bond. ECF No. 1 ¶ 25; ECF No. 8-5. Jose was released, and on September 10, 2021, the Government administratively closed Jose's immigration removal case. ECF No. 1 ¶ 28.

At some point after his release, Jose filed an application for a U visa with United States Citizenship and Immigration Services ("USCIS"). ECF No. 1 ¶ 5. A U visa "allows persons who have been victims of certain crimes and who meet other criteria to remain in the United States." *Jose Alberto C. D. v. Blanche*, No. 26-cv-3566 (KMM/LIB), 2026 WL 2588362, at *1 (D. Minn. Sept. 2, 2026). But the number of U visas that may be issued each year is statutorily capped at 10,000, 8 U.S.C. § 1184(p)(2)(A), and USCIS adjudicates

[2] The Court uses Petitioner's first name throughout this order to comport with this District's practice of using only the first name and initials of any nongovernmental parties in immigration cases. No disrespect is intended in doing so.

petitions on a first-come, first-served basis, *see* 8 C.F.R. § 214.14(d)(2). And because final adjudications on U visa petitions can sometimes take years, USCIS implemented a "bona fide determination" ("BFD") policy as a waiting list process. U.S. Citizenship & Immigr. Servs., Policy Manual, Vol. 3, Part C, Ch. 5, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 [https://perma.cc/NA7Z-Y7TH]. Under the policy, USCIS first determines whether a U visa petitioner has submitted a "bona fide" petition, meaning that the petitioner has complied with initial evidence requirements and successfully completed a background check. *Id.* If so, USCIS may exercise its discretion to grant employment authorization and deferred action. *Id.* Deferred action is "an exercise of prosecutorial discretion that defers the removal of the [noncitizen] based on the [noncitizen]'s case being made a lower priority for removal" but "does not confer any immigration status upon a[] [noncitizen]." New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53014, 53015 n.3 (Sept. 17, 2007). A petitioner "may be removed from the waiting list, and the deferred action or parole may be terminated at the discretion of USCIS." 8 C.F.R. § 214.14(d)(3). Once a U visa becomes available, the petition is subject to final adjudication, and, if approved, the petitioner receives lawful U visa nonimmigrant status. *Id.* § 214.14(d)(2).

On March 20, 2023, USCIS issued Jose a BFD letter, stating that the evidence submitted with his U visa application "appears to demonstrate" eligibility for a U visa. ECF No. 1-1. But because there were no available visas, USCIS placed Jose "in deferred

action as permitted by regulation."[3] *Id.* Jose's BFD letter states that deferred action is "an act of administrative convenience to the government which gives some cases lower priority for removal." *Id.* On May 7, 2024, USCIS approved Jose's subsequent work authorization request, which is valid until May 6, 2028. ECF No. 1-2. On October 11, 2024, Jose was convicted of "battery" and "disorderly conduct" in St. Croix County (Wisconsin) Circuit Court. ECF No. 8-7 at 2.

On July 1, 2026, ICE issued a "Notice to Obligor to Deliver Alien" to Jose's bond obligor, telling the obligor that it had a duty "[u]nder the terms of the Delivery Bond you posted" in 2017 to ensure that Jose appeared for an interview with ICE on July 22, 2026. ECF No. 1-4; ECF No. 8-7 at 2. Jose appeared at the interview, and ICE officers served Jose with an I-200 administrative arrest warrant, ECF No. 8-6, and took Jose into custody, ECF No. 8-7 at 2. Jose remains detained at the Freeborn County Jail. ECF No. 1 ¶ 39. Jose has not had a bond redetermination hearing. *Id.* ¶ 40.

On August 12, 2026, Jose filed the instant habeas petition. ECF No. 1. Jose first argues that his detention is contrary to law under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), because his detention is prohibited by a preliminary injunction entered in a class action lawsuit in the Central District of California. ECF No. 1 ¶¶ 84–91; *see Immigr. Ctr. for Women & Child. v. Noem* ("*ICWC*"), 351 F.R.D. 324 (C.D.

---

[3] The Government references that USCIS is "actively working to revoke Petitioner's deferred action status on account of the criminal charges." ECF No. 7 at 3. Further, USCIS will issue an intent to deny deferred action to Petitioner, which will allow Jose to respond. *Id.* That proffered information is not being considered in the Court's evaluation of Jose's habeas petition.

Cal. 2026). Jose alternatively argues that his detention without a bond hearing violates his procedural and substantive due process rights under the Fifth Amendment. ECF No. 1 ¶¶ 92–107. Finally, Jose argues that he was unlawfully arrested without a warrant, in violation of the Fourth Amendment and 8 U.S.C. § 1357(a)(2). *Id.* ¶¶ 108–18.[4]

Jose first seeks his immediate release. *Id.* ¶ 125. Alternatively, Jose suggests that "if the Court believes further process is required before ordering" his release, the Court "should hold its own custody hearing and determine whether the government can prove by clear and convincing evidence that Jose must remain in custody." *Id.* ¶ 126. Jose suggests that this "is a more efficient and effective remedy than ordering an immigration judge to conduct a hearing, which may lead to additional enforcement proceedings and delays before the unlawful detention in this case is remedied." *Id.*

The Court ordered the Government to respond to the petition no later than August 20, 2026, with any reply from Jose due by August 27, 2026. ECF No. 3. Both the Government and Jose timely provided that briefing. ECF Nos. 7, 9.

## ANALYSIS

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul*

---

[4] Jose also contests that he is subject to mandatory detention as a statutory matter. ECF No. 1 ¶¶ 119–22. Jose recognizes, however, that the Eighth Circuit foreclosed this argument in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), so he includes that claim only for issue-preservation purposes. ECF No. 1 ¶ 122.

*v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). The protections of habeas corpus extend to those in immigration detention. *See INS v. St. Cyr*, 533 U.S. 289, 305–06 (2001).

**I. APA Claim**

Jose first argues that ICE's decision to arrest and detain him is in violation of Section 706(2)(A) of the APA, which provides that a court shall "hold unlawful and set aside agency action" that is "not in accordance with law." 5 U.S.C. § 706(2)(A). Specifically, Jose argues that ICE's actions are contrary to law because he is a member of the *ICWC* class, and the *ICWC* preliminary injunction "protects individuals whom USCIS granted deferred action based on pending U- or T-visa petitions and whom ICE detains during the authorized period of deferred action without first providing notice and an opportunity to be heard." ECF No. 9 at 3. According to Jose, his detention is "not in accordance with law" because it "directly contravenes the § 705 relief issued in" *ICWC*. ECF No. 1 ¶ 91.

In 2021, ICE instructed agency personnel to refrain from immigration enforcement against individuals with pending U visa applications (the "2021 Directive"). *ICWC*, 351 F.R.D. at 353. Unless "exceptional circumstances" applied, ICE was to "defer" immigration enforcement until USCIS adjudicated the U visa petition. *Id.* In 2025, however, ICE rescinded the 2021 Directive and eliminated the presumption of protection from immigration enforcement for U visa petitioners and replaced it with a presumption of enforcement, subject to narrow limitations (the "2025 Guidance"). *Id.* at 354. The 2025 Guidance also allegedly refused to honor USCIS grants of deferred action to noncitizens

with pending U visa petitions and instead effectively revoked those grants of deferred action by pursuing immigration enforcement actions against such persons. *Id.*

On May 20, 2026, the Central District of California in *ICWC* held that the 2025 Guidance was arbitrary, capricious, and contrary to law. *Id.* at 381–88. The court preliminarily certified three classes, two of which are relevant here: (1) individuals with pending U visa petitions "ICE detains or seeks to detain for civil immigration enforcement"; and (2) individuals granted deferred action based on a pending U visa petition "ICE detains, seeks to detain, or removed without providing notice and an opportunity to be heard regarding potential revocation of their deferred action status." *Id.* at 396. Under 5 U.S.C. § 705, the court then stayed the 2025 Guidance as applied to those classes. *Id.* at 397.

The Court, and others in this District, have previously addressed and rejected the argument made by Jose about *ICWC*. First, there are substantial questions about what effect, if any, *ICWC*'s injunction has on the Court here. *Jose Alberto C. D.*, 2026 WL 2588362, at *4 (noting that "this Court has serious reservations about whether the ruling in *ICWC* actually applies to anyone beyond the named plaintiffs in that case"); *Kevin J. R. M. v. Blanche*, No. 26-cv-3122 (KMM/JFD), 2026 WL 2230647, at *4 (D. Minn. July 17, 2026)*, report and recommendation adopted*, 2026 WL 2227793 (D. Minn. Aug. 3, 2026) ("Petitioner has not explained how a habeas petitioner can proceed under the APA to enforce preliminary injunctive relief granted by another federal district court.").

But even if *ICWC* had effect here, the order would not entitle Jose to release. If the *ICWC* order applied, "the 2021 Directive would remain in effect, given that the 2025

Guidance was promulgated to rescind the 2021 Directive." *Carlos E. V.*, 2026 WL 2150391, at *3. But the 2021 Directive did not forbid *all* "enforcement against U visa petitioners"; instead, it "allowed immigration enforcement against U visa petitioners in 'exceptional circumstances.'" *Id.* (quoting *ICWC*, 351 F.R.D. at 353). And "exceptional circumstances" included situations in which a noncitizen "poses an articulable risk of death, violence, or physical harm to any person." *Id.* (citation omitted).

Jose's October 2024 conviction for battery, which he does not dispute, "may well have furnished 'exceptional circumstances' for immigration officials to detain him, notwithstanding his pending U visa petition." *Id.* Jose acknowledges as much but argues that "the 2024 conviction . . . does not establish when USCIS learned of that conviction, what significance USCIS assigned to it, or that USCIS completed any process to terminate deferred action before ICE detained" him. ECF No. 9 at 15. But the 2021 Directive allowed ICE to bring enforcement actions *despite* deferred action status, in "exceptional circumstances." *ICWC*, 351 F.R.D. at 353. So it does not matter whether USCIS terminated Jose's deferred action. What matters is that exceptional circumstances arguably existed to arrest him despite it. *Jose Alberto C. D.*, 2026 WL 2588362, at *4 (noting that a petitioner failed to show that under previous ICE policies "ICE cannot remove [a noncitizen] because of his BFD deferred action status"). In sum, Jose's "argument that he would not have been arrested and detained but for the now-stayed 2025 Guidance is purely speculative." *Carlos E. V.*, 2026 WL 2150391, at *3. And speculation does not meet Jose's burden to demonstrate entitlement to habeas relief. *See Jose J. O. E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025) ("The burden is on the petitioner to prove illegal detention by

a preponderance of the evidence."); *cf. Berchie v. Bondi*, No. 25-cv-3197 (KMM/SGE), 2025 WL 4943114, at *2 (D. Minn. Nov. 4, 2025).

**II. Due Process**

Jose next argues that his re-detention without "notice, a hearing, or revocation of his prior release" violates his due process rights. ECF No. 9 at 4. This Court has concluded that noncitizens who enter this country and develop "substantial connections within the United States" have a procedural due process right to a bond hearing. *Jesus Alejandro G. A. v. Blanche*, No. 26-cv-1932 (LMP/ECW), 2026 WL 1383138, at *5–12 (D. Minn. May 18, 2026) (*vacated on other grounds by Jesus Alejandro G. A. v. Blanche*, No. 26-cv-1932 (LMP/ECW), ECF No. 21 (D. Minn. May 21, 2026)); *see Anthony Javier R. M. v. Blanche,* No. 26-cv-2283 (LMP/DLM), 2026 WL 1506306, at *3–7 (D. Minn. May 29, 2026); *Abdifatah M. A. v. Blanche*, No. 26-cv-3475 (LMP/DLM), 2026 WL 2410402, at *2 (D. Minn. Aug. 18, 2026).

Jose is similarly situated to the petitioners in these cases. First, Jose has lived in the United States for a quarter of a century, ECF No. 1 ¶ 2, far longer than the petitioners in *Jesus Alejandro G. A.* (24 months), *Anthony Javier R. M.* (41 months), and *Abdifatah M. A.* (37 months). He has been granted deferred action and employment authorization by the Government, ECF Nos. 1-1, 1-2, which, although not constituting lawful immigration status, has nevertheless allowed him to "live a productive life in the community." *Anthony Javier R. M.*, 2026 WL 1506306, at *8 (citation omitted). Jose therefore has acquired a "protected interest" in his "continued liberty." *Id.* He has family members in Minnesota and Wisconsin, including a sister in St. Paul, ECF No. 1 ¶ 22, which underscores the

substantial connections he has with the United States, *see Felipe S. P. v. Blanche*, No. 26-cv-2212 (NEB/DJF), 2026 WL 1911656, at *7 (D. Minn. July 2, 2026). And although Jose's criminal history weighs against his request for a bond hearing, nothing suggests that he would be in "custody now if not for his immigration detention." *Jesus Alejandro G. A.*, 2026 WL 1383138, at *11. Moreover, any concerns about Jose's criminal history may be considered during his bond hearing, where an immigration judge will weigh whether Jose is a "danger to the community at large." *In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006).

Accordingly, the Court grants Jose's habeas petition insofar as he seeks an individualized bond hearing.[5] But the Court rejects Jose's request that the Court itself conduct that bond hearing. ECF No. 1 ¶ 126. Instead, the Court orders the Government to provide Jose an individualized bond hearing before an immigration judge. *See* 8 C.F.R. § 1003.19(a) (allowing for review of custody and bond determinations by an immigration judge).

## III. Claims Conceded or Not Raised in the Petition

As a final matter, Jose raises—for the first time in his reply brief—that ICE's decision to re-detain him violated 8 C.F.R. § 236.1(c)(9). ECF No. 9 at 16–17. But a petitioner cannot amend his petition in a reply brief. *Abdifatah M. A.*, 2026 WL 2410402, at *1 n.4. As a result, the Court will not consider that argument here.

---

[5] To the extent that Jose seeks his immediate release as a remedy for the due process violation, the Court declines that request. *See Milton A. v. Brott*, No. 26-cv-2580 (SRN/EMB), 2026 WL 1493709, at *4 (D. Minn. May 28, 2026) (collecting similar cases and concluding that "the appropriate remedy is an individualized bond hearing").

Conversely, Jose raised a Fourth Amendment challenge in his petition, arguing that ICE conducted a warrantless arrest not supported by 8 U.S.C. § 1357. ECF No. 1 ¶ 112. As the Government responded, ICE had a warrant for Jose's arrest. ECF No. 7 at 19–24. Jose did not reassert his claim and, to the contrary, concedes that ICE had an I-200 warrant. ECF No. 9 at 2 (acknowledging "the Form I-200 warrant ICE used to arrest him"); *id.* at 15 (arguing that the "issuance and execution of the I-200 warrant was the 'consummation' of ICE's decision-making"). In doing so, Jose has conceded this claim. *Ovidio D. v. Blanche*, No. 26-cv-3374 (KMM/SGE), 2026 WL 2333992, at *1 n.2 (D. Minn. Aug. 12, 2026) (noting that petitioner "appear[ed] to concede in his Reply that he was served a warrant").

## CONCLUSION

For these reasons, and based on all the files, records, and proceedings in this matter, **IT IS HEREBY ORDERED** that Jose Guillermo B. R.'s Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED** as follows:

1. By no later than **September 17, 2026**, the Government must provide Jose Guillermo B. R. with a bond hearing consistent with 8 C.F.R. § 1003.19.

2. By no later than **5:00 p.m. on September 18, 2026**, the Government must provide the Court with a status update concerning the results of the bond hearing conducted pursuant to this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 10, 2026

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge